STATE OF VERMONT

ENVIRONMENTAL COURT

|  | }  |
|---|---|
| In re: Linnebur Development Permit Application | } Docket No. 155-7-06 Vtec |
| (Appeal of Linnebur) | } |
|  | } |

<u>Decision and Order on Cross-Motions for Summary Judgment</u>

Appellant-Applicants John Linnebur and Martha Linnebur appealed from a decision of the Development Board of Adjustment (DBA) of the Town of Brookfield dated June 8, 2006, overturning the Zoning Administrative Officer's approval of a zoning permit for a 40' x 60' garage building and three temporary storage containers on their residential property. Appellant-Applicants are represented by Oliver Twombly, Esq.; the Town is represented by Pamela Stafford, Esq. The abutting landowner who brought the appeal to the DBA did not enter an appearance in the appeal in this Court. The parties have moved for summary judgment.

The following facts are undisputed unless otherwise noted.

Appellant-Applicants own a 6.2-acre property improved with a residence and an attached two-car residential garage, located at 56 Old Stage Road in the Agricultural/Residential zoning district.

Appellant-Applicants currently have three 40' x 8' x 8' storage containers on their property, as well as miscellaneous car parts and at one time at least eleven unregistered vehicles. Some of the vehicles and parts may have been moved into the containers in light of Development Bylaw §4.8 regarding the outdoor storage of junk and inoperable vehicles visible from the road. At the time of the appeal to the DRB, the vehicles and equipment included a backhoe, a dump truck, a van, military vehicles, trucks and automobiles, at least some of which are visible from the road. This is not, however, an enforcement action, and

1

no notice of violation or related enforcement action has been appealed to, filed with or otherwise brought to the attention of the court.

Appellant-Applicants restore and work on vehicles as a hobby; they do not propose to work on vehicles as a commercial business or a home occupation business. If their activity were to exceed the hobby use to constitute a home occupation, then the activity would have to meet §4.3 of the Development Bylaw as well, although it could be carried on in an accessory building. However, we note specifically that that issue is not before the Court.

The DBA ruled that the intended use of the proposed garage was for "vehicle storage and hobby vehicle restoration" and that it was a permissible accessory use. As neither the Town nor the original appellant appealed this issue further, the issue of the use was resolved by the DBA in Appellant-Applicants' favor and has become final.

Once the proposed garage is constructed Appellant-Applicants intend to move the contents of the containers (also referred to as "trailers" in the DBA decision) into the garage, and to remove the containers from their property. One of the three as-placed containers is located 40 feet from the property boundary; the required setback is 50 feet. The DBA ruled that the smaller-than-required setback of one of the containers was a violation, but that Appellant-Applicants would be held to the representations in their application that the containers were temporary and would be moved off the property when the proposed garage was built. As neither Appellant-Applicants nor the original appellant appealed this issue; it has become final and is not before the Court in this appeal.

Appellant-Applicants applied for a zoning permit to construct a 40' x 60' garage, 14 feet high at the eaves and 24 feet high at the peak, to be located behind (northerly) of their existing house and attached garage. The proposed garage building is a pre-engineered steel building with a steel roof, in a color scheme to match the existing residence. The building is proposed to have two overhead bay doors, one of which will be 12 feet in

height.   The proposed garage in the proposed location[1] meets all the dimensional requirements of the Bylaw, including as to height and as to setbacks.  The proposed garage is proposed to be placed at an angle to the street frontage behind the house so that only approximately three feet of its southeast corner will be visible from the street, that is, not blocked by the house.

Appellants' existing house is 29 feet wide by approximately 41 feet[2] long, with an attached garage 24½ feet wide by approximately 26 feet long.  As shown on the plan, the length of the existing house-and-attached-garage building is 67 feet long.  If the placement of the buildings on the plan is represented accurately, it appears to be placed at an angle to the street frontage so that both the front and one side of the house are visible from the street, making the apparent length of the building as seen from the street somewhat longer than the 67-foot measurement.  The parties have not provided to the Court the floor area of the existing house or attached garage; however, the DBA stated that Ms. Linnebur estimated that "the total square footage of living space on two floors, with the addition of the floor space of the attached garage, may be 2400 sq. ft." Using the dimensions of the building as shown on the application plan, and calculating the house as two stories (that is, without useable basement or attic space[3]) and the attached garage as one story, the floor area of the existing house totals approximately 2378 square feet, and with the attached garage it totals approximately 3015 square feet.

---

[1] This location was changed during the DBA hearing to be closer to the house than the original application; the DBA's decision was based on the new location and the application before the Court is for the location as ruled on by the DBA.

[2] The total length of the house plus attached garage is shown on the site plan as 67 feet, but the lengths of the two sections have been calculated by scale from that plan.

[3] If the house has useable basement or attic space, its floor area may in fact be larger than that calculated for the purposes of this decision.

The proposed garage will be a slab-on-grade construction with a frost wall. The DBA decision reflects that: "[t]here will be a drain in the proposed garage, which will be tied to the drainage system used with the existing attached garage. The location and design of the dry well or leach field for the existing drainage system are unknown." This statement suggests that the drainage system for the existing garage and the proposed garage are different from the septic tank and mound system shown as serving the house. No information has been provided to the Court to show whether toilet facilities are proposed for the proposed garage, or whether the statement in the DBA minutes refers to a drain from the floor of the garage that could convey oil, gasoline (or other substances associated with the renovation of vehicles) into the ground.

The Brookfield Elementary School property is adjacent to the easterly boundary of Appellant-Applicants' property. The school's potable water supply is already affected by salt from the road.

Questions 1, 2, 3, and 4 of the Statement of Questions

Questions 1, 3, and 4 address whether the determination of whether the garage building is accessory is dependent on its size, appearance, or footprint in comparison with the house (including its attached garage). Question 2 asks whether the Court should approve the application as an accessory building as a matter of law.

Under the Development Bylaw, the test for whether a building or use is accessory is whether it is "customarily incidental and subordinate to the principal building or use located on the same lot." Bylaw, Article 5. The Bylaw does not set a particular limit on size[4] or percentage of floor area for an accessory building in comparison with the principal

---

[4] Unlike minor "auxiliary buildings" which are defined by their size to exclude them even from the permitting requirements for accessory buildings, §3.2.

4

building, other than with reference to home occupations use. §4.3(C). Therefore the Court must look to the totality of the circumstances to determine if this building is within the scope of an accessory building that is customarily incidental and subordinate to the principal building on the property.

A garage or barn structure of this size range is customarily incidental to residences in Vermont. Many free-standing garages and barns are as big as or somewhat bigger than the residence on the property. See, e.g., Appeal of Stohl, Docket No. 98-6-04 Vtec (Vt. Envtl. Ct., April 8, 2005) slip op. at 3, n. 3. (concluding that a 32' x 50' 3-bay garage may be an accessory structure to a residence, although its use was denied as a commercial use and therefore not a use accessory to the residence).

However, as material facts are disputed (or at least have not been provided to the Court) regarding the floor area of the house and attached residential garage, and whether the proposed building is in fact largely blocked from view from the street by the house and attached residential garage, the Court cannot determine on summary judgment whether this proposed garage building is subordinate to this principal building on this property. If the evidence shows that the floor area of the proposed garage is in the same or a smaller size range as the floor area of the house and attached residential garage, and that it is largely blocked from view by the house and attached residential garage, it may be determined to be subordinate to the principal building and therefore to qualify as an accessory building, and therefore as a permitted use in the district. In the scheduled conference (see final paragraph of this decision) we will determine whether an evidentiary hearing is necessary to resolve this issue.

Questions 5 and 6 of the Statement of Questions

Questions 5 and 6 ask whether conditions can be imposed on the permit to require Appellant-Applicants to obtain a permit from the Vermont Agency of Natural Resources

for the drainage system for the building (Question 5) or regulating the location of the building's lighting or exhaust vent (Question 6).

If the building is an accessory building and the use is a residential hobby use, and not a home occupation, then the provisions of Bylaw §4.3 do not apply. Those provisions would allow the DBA, and hence this Court, to regulate the size, placement, type and scale of use to keep it compatible with the residential area in which it is located, §4.3(A), and to regulate outdoor storage, §4.3(F), and "obnoxious or excessive noise, smoke, dust, odors, or other forms of interference not characteristic of residential uses and detectable at the property lines." §4.3(G). Other than for outdoor storage under §4.8, or for the illumination of signs under §4.15, the Bylaw does not set independent performance standards regulating such characteristics for permitted uses, nor does it require that permitted uses meet state[5] or federal standards.

However, §3.5(B) of the Bylaw does allow the DBA (in an appeal from the administrative officer's decision), and hence this Court, to "attach additional reasonable conditions and safeguards as it deems necessary to implement the purposes of the Act, these regulations, and the municipal plan currently in effect." This section appears to apply even in cases in which the underlying permitted-use development permit appealed from could not have contained such conditions. The issue of whether such conditions should be imposed by the Court may, however, remain for the merits of this appeal, unless the DBA wishes the matter to be remanded to it for further proceedings. V.R.E.C.P. 5(*i*).

---

[5] Of course, under 24 V.S.A. §4448(c), the zoning administrative officer is advised (but not required) to inform any permit applicant "that the person should contact the regional permit specialist employed by the agency of natural resources in order to assure timely action on any related state permits; nevertheless, the applicant retains the obligation to identify, apply for, and obtain relevant state permits."

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Summary Judgment is GRANTED in favor of the Town on Questions 1, 3, and 4 to the extent that the determination of whether the garage as an accessory building is "subordinate" to the residential building may consider factors including, but not limited to, the size (including the floor area), the appearance, and the size of the footprint of the garage, in comparison to that of the residential building, and is otherwise DENIED. Summary Judgment is DENIED as to Question 2, as material facts are disputed (or at least have not been provided) regarding the merits of whether the proposed garage should be approved as an accessory building. Summary Judgment is GRANTED in favor of the Town on Questions 5 and 6 to the extent that §3.5(B) of the Bylaw authorizes the Court to impose "additional reasonable conditions and safeguards," but is otherwise DENIED as material facts are disputed (or at least have not been provided) regarding the merits of whether such conditions should be imposed if the proposed garage were to be approved as an accessory building.

A telephone conference has been scheduled (see enclosed notice) to discuss whether any matters remain for a hearing on the merits, whether mediation would be useful at this point in the appeal, and to determine the DBA's position, if any, on remand under V.R.E.C.P. 5(*i*).

Done at Berlin, Vermont, this 2nd day of May, 2007.


_____
Merideth Wright
Environmental Judge

7